## SAMUEL H. RICHARDSON ET AL.

### v.

## THE INTERNATIONAL BANK.

BANKS—PAYMENT OF CHECKS—CHECKS DRAWN AGAINST PARTICULAR FUND.—Parties doing business as a copartnership had, at the time of the dissolution of the partnership, overdrawn their account at the bank to a considerable amount. One of the partners continued business under the firm name, the bank having notice of the change, and also being advised that the future deposits were for the payment of checks drawn under the new arrangement. *Held*, that the bank could not take of the new deposits and appropriate a sufficient amount to pay the overdraft of the former partnership, and thereby refuse payment of a check drawn against the fund under the new business arrangement.

ERROR to the Circuit Court of Cook county; the Hon. KIRK HAWSE, Judge, presiding. Opinion filed November 29, 1882.

Mr. I. K. BOYESEN for plaintiff in error; that the bank can claim no lien on the deposit of a partner, in order to set off the same against the debt owing by the firm, cited Morse on Banking, 39; Grant on Banking, 308; Watts v. Christie, 11 Beav. 355; *Ex parte* McKenna, 30 Law Jour. 20; Dawson v. Real Estate Bank, 5 Pike, 283.

Richardson v. Internat'l Bank.

Demands to be set off must be mutual: Waterman on Set-off, 252; Burgwin v. Babcock, 11 Ill. 28; Bridgham v. Tileston, 3 Allen, 371.

Funds deposited in bank for a special purpose known to the bank can not be withheld from that purpose, and set off against a debt due the bank from a depositor: Morse on Banking, 35; Grant on Banking, 300; U. S. Bank v. Macalester, 9 Barr, 479; Davis v. Bousler, 5 T. R. 492; Cox v. Prentice, 3 M. & S. 344; Jarvis v. Rogers, 15 Mass. 397; Locke v. Prescott, 32 Beav. 261; Brandav v. Barnett, 12 C. & T. 787; Bodenham v. Hoskins, 13 E. L. & E. 222; Lucas v. Dorrein, 7 Taunt. 279.

Messrs. Bisbee, Ahrens & Hawley, for defendant in error; upon the right of the bank to make the application of the deposits to the debt of the depositor, cited Craig v. Henderson, 2 Pa. St. 261; Hoyt v. Murphy, 18 Ala. 316; Waterman on Set-off, 299; Allison v. Davidson, 2 Dev. Eq. 79; *Ex parte* Williams, 11 Ves. 3; *Ex parte* Cooper, 1 Men. D. D. 358.

Bailey, P. J. This was an action of assumpsit brought by Samuel H. Richardson and Edward May against the International Bank upon a bank check for $4,830.79, dated September 1, 1879, drawn on said bank by John D. Oakford by the name of John D. Oakford & Co., payable to the order of the plaintiffs. The principal controversy in the case turns upon the question whether the bank, at the time the check was presented for payment, had sufficient funds belonging to the drawer to pay it.

It appears that prior to September 1, 1879, John D. Oakford and one Frederick H. Thomas were commission merchants doing business in Chicago, under the firm name of John D. Oakford & Co., and were depositors in said bank. On or shortly before the last business day in August, 1879, said firm was dissolved by the retirement of Thomas, and Oakford thereafter continued the business, using in said business the old firm name. At the time of its dissolution the firm had overdrawn their account at said bank about $11,000. On the first and second days of September, 1879, Oakford deposited in said bank various sums of money amounting in

all to $17,049.99, and drew various checks on said bank aggregating a little less than that amount. In making the deposits as well as in drawing the checks, Oakford used the firm name, and the bank on receiving the deposits, entered them to the credit of the old firm account. On the 1st day of September the bank paid Oakford's checks to the amount of $4,630.04, and on the 2d day of September to the amount of $62.50, and refusing payment of the residue of his check (of which the check in suit was one), applied a sufficient amount of Oakford's deposits to the satisfaction of the firm overdraft to balance that account, leaving a small overplus, not sufficient, however, to pay the plaintiffs their check.

The plaintiffs claim that Oakford, after the dissolution, and before he commenced making further deposits. notified the bank officers that his firm was dissolved, and that he should carry on the business individually, and although the evidence as to such notice is somewhat conflicting, yet it so strongly preponderates in favor of the plaintiffs that, for the purposes of our present decision, we are constrained to regard the fact that such notice was given as being satisfactorily established. Without attempting to state in detail the evidence of notice, it will be sufficient for our present purpose to allude to one of the various matters bearing upon that question. It appears from the testimony of Oakford and of another wholly disinterested witness, an agent of the firm of Washington Butcher's Sons, that on September 1st, Oakford drew a check on said bank in favor of said Washington Butcher's Sons for $4,442.57, and that payment of said check was refused on presentation, on the ground that the bank had not been furnished with the signature of Oakford's new firm; that the agent who presented the check went and found Oakford, and returned with him to the bank, and that the cashier, being satisfied with the signature, certified and afterward paid the check.

It also appears from the testimony of Oakford that while he was at the bank in the matter of said check, the cashier asked him whether he had drawn any other checks, to which

Richardson v. Internat'l Bank.

Oakford replied that he had one in favor of Joseph Jones & Sons for $1,800 or $1,900, and Oakford then told the cashier that he had made a deposit to meet that check, and that he would make further deposits to meet any checks he might draw. To this testimony there is no substantial contradiction. The cashier, it is true, swears that he has no recollection of the occurrence, but his testimony on this and other kindred matters shows that his recollection in relation thereto is indistinct and unsatisfactory, and sufficient to furnish but slight contradiction to the affirmative testimony of Oakford.

It thus appears, first, that the bank when it received Oakford's deposits, knew that Oakford's firm was dissolved, and that although he was still using the old firm name, he was making deposits upon a new account, to which his former partner was not a party; and secondly, that before Oakford made the deposits, the bank was notified that he intended to make them to meet the checks he was about to draw, and that such deposits were specifically appropriated by the depositor, in advance, to the payment of such checks.

The bank made no objection to dealing with Oakford upon the basis thus proposed by him, and by its silence led him to suppose that such proposal was satisfactory, until it had got into its possession a sufficient amount of his funds to balance the overdraft of the old firm, and then it claimed and assumed to exercise the right to appropriate nearly the whole fund to the satisfaction of that overdraft, leaving the checks for the payment of which the deposits had been made, dishonored.

It is claimed that some at least, of the funds deposited, were derived by Oakford from contracts entered into by the old firm, and a claim that the bank had a right, after getting them into its possession, to appropriate them to the payment of a firm indebtedness, is sought to be based upon that circumstance. In this view we are unable to concur. It is true Oakford's firm had entered into certain contracts on the Chicago Board of Trade, for the purchase, wholly on credit, of certain commodities for future delivery. A number of such contracts matured on the 1st day of September, and Oakford was compelled to receive the commodities purchased, giving his

own check in payment therefor, and to sell them again on the market, to raise the money with which to meet his checks. In some cases, instead of making a profit, the sales were at a loss, and taking all the transactions together, if there was any profit at all, it was very insignificant. Now it may be that the net profits realized from the firm contracts, if there were any such, might be regarded as firm assets, applicable in the first instance to the payment of firm debts, but we know of no principle upon which any of the moneys realized by Oakford from the sale of these commodities beyond the net profits, could be held as firm assets. As the evidence fails to show profits, but rather the contrary, the principle derived from the law of partnerships, here sought to be invoked, has no application.

It follows that the moneys deposited by Oakford were his own moneys, subject absolutely to his control and disposition. He was under no duty or obligation to deposit them with the defendant, but might, if he chose, have deposited them in another bank, or kept them in his own possession, and he therefore had a right, when he made the deposit, to make it upon such terms and to make such appropriation of the money deposited, as he saw fit; and the bank by receiving the deposit with notice of such appropriation, and without signifying to him any dissent therefrom, was bound to apply the money to the purpose for which Oakford deposited it, and had no right or power to apply it to any other purpose whatever. The check in suit was presented for payment on the 2d day of September, and at a time when the amount of Oakford's deposits in possession of the bank largely exceeded the face of the check, and it therefore became the duty of the bank to pay it.

The bank having the money to pay the check, and having refused to pay it on presentation, is, under the law as it exists in this State, liable to the holder for the amount of the check. The court having found the issues, and given judgment in favor of the defendant, decided contrary to the evidence, and the judgment will therefore be reversed and the cause remanded.

Judgment reversed.